JOHN RHODES
Assistant Federal Defender
Federal Defenders of Montana
Missoula Branch Office
125 Bank Street, Suite 710
Missoula, MT 59802
Phone: (406) 721-6749
Fax: (406) 721-7751
Email: john_rhodes@fd.org

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GARY ALLEN OSTERHOUT,<br><br>Defendant. | CR 15-29-BU-DLC<br><br>**SENTENCING MEMORANDUM** |

**INTRODUCTION**

Gary Osterhout is a 60-years-old drug addict, whose introduction to drugs came when he joined the Army in 1972, at the age of 17. PSR ¶¶ 50, 51, and 68. In addition to his drug addiction, Mr. Osterhout has serious health problems. PSR ¶ 57. He requests a sentence of five years imprisonment, followed by at least four years

of supervised release.

## GUIDELINES DISPUTE

Mr. Osterhout objects to using the drug amounts he divulged during his cooperation with the government to score his Guidelines drug quantity. The use of such information is unfair, constitutes a form of sentencing entrapment, violates Mr. Osterhout's Fifth and Sixth Amendment rights, and creates perverse sentencing disparity. A person should be better, not worse, off if he cooperates with government agents by providing information, in reply to promises by the officers, or at least indications or implications, that if the person will cooperate, things will go better for the defendant than if he refuses to answer the officers' questions.

Mr. Osterhout asks the Court to consider three different defendants, each of whom has been dealing large amounts of methamphetamine for years. One defendant refuses to cooperate, and law enforcement learns nothing of suppliers and purchasers in the community, or their practices and predilections; the other two cooperate, and law enforcement learns a great deal about who is bringing large amounts of methamphetamine into the community, and who is purchasing the drugs. One of the two cooperating persons has a lawyer, and the lawyer negotiates an immunity agreement, sometimes known colloquially as a "free talk" letter. The other cooperator agrees to divulge similar information before consulting a lawyer. The first and second defendants, the one who did not cooperate at all, and the one who

cooperated with the advice of counsel, are necessarily better off than the third person, because the information provided by the third person, at least as recommended by the PSR in this case, will be used to dramatically increase his Guidelines sentence. Even with a substantial assistance departure, if the PSR is followed, the court would be departing from a Guidelines level inflated by the cooperation.

Use of information provided by a cooperating defendant to set the Guidelines offense level offends the goals of 18 U.S.C. § 3553(a)(6). To give a higher sentence to a cooperating defendant than to one who does not try to help law enforcement creates unwarranted disparity between similarly situated defendants.

In this case, based on the drugs Mr. Osterhout was found to have in his possession, and distributed in known transactions, he would be facing an offense level of 32. If three levels are subtracted for acceptance of responsibility, his Total Offense Level would be 29, and with a Criminal History Category of III, his Guidelines range would be 108-to-135 months. In comparison, his present Guidelines range, including the reduction for acceptance of responsibility, is 210-to-262 months. In other words, the reward for cooperation is a sentence increased by 102-to-127 months. At the high end, the increase is more than twice the mandatory minimum in this case. It makes no sense, and perverts justice, to sentence someone to an additional eight-to-ten years for being cooperative. And it sends a terrible, counter-productive message as a matter of criminal justice and acceptance of

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

3

responsibility.

Mr. Osterhout's objection is also based upon the language of U.S.S.G. § 1B1.8 that prohibits the use of self-incriminating information provided by a defendant when the defendant agrees to cooperate with the government by providing information concerning unlawful activities of others. While that section explains that to avoid the use of the defendant's information against the defendant, as part of the cooperation agreement, the government must agree it will not use the information against him, it also explains that information will not be used to calculate the Guidelines, except to the extent provided in the agreement.

Following his initial traffic stop on May 5, 2015, Mr. Osterhout was advised of his *Miranda* rights. Part of these "rights" was that he could remain silent and that anything he said could be used against him in court. After being transported to the Gallatin County Law and Justice Center, Mr. Osterhout provided information with the intention of aiding law enforcement. While being questioned, Mr. Osterhout asked that the recording equipment be turned off. Mr. Osterhout indicated in writing that he had information concerning the "Mexican Mafia." The agents turned off the recording device and Mr. Osterhout provided details concerning his drug dealing activities. Thus, even with *Miranda* and related admonishments, Mr. Osterhout could reasonably expect that he had an "agreement" with the MRDTF agents that any information he gave to law enforcement as he kept talking to them would not only be

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

4

taken as an admission of his criminal culpability, but that his admissions would enure to his benefit, rather than to his detriment. In fact, after giving this information, Mr. Osterhout was recruited to act as an undercover informant for law enforcement and released later that day.

The drug total is based principally on Mr. Osterhout's hearsay statements taken at face value with minimal, insufficient corroboration. There are several problems with relying on these types of statements. First, such statements could be intentionally inflated and distorted in order to garner favor with the defendant's captors. Second, relying solely on such statements contradicts basic principles of law. The term *ipse dixit* is an assertion by one whose sole authority for it is the fact that he himself had said it. Barron's Law Dictionary (3rd Ed. 1991). It is axiomatic that an *ipse dixit* alone is frowned upon to prove a fact or facts. *See Kuney v. Frank*, 308 F.2d 719, 724 (9th Cir. 1962). A defendant's unsubstantiated testimony is insufficient to entitle him to a defense. *See United States v. Phillips*, 149 F.3d 1026, 1029-1030 (9th Cir. 1998). Here, the statement of Mr. Osterhout's does not sufficiently support the drug calculations.

Stated in another way, as reviewed above, Mr. Osterhout did – certainly from the perspective of law enforcement – the right thing. He waived his right to counsel, submitted to an interview, and took responsibility for the full scope of his criminal conduct; in doing so he unknowingly subjected himself to a Guidelines drug

calculation based on 45 kilograms of methamphetamine, even though, until his cooperation, law enforcement knew about less than one kilogram.

The paradox that Mr. Osterhout finds himself illustrates one of the short comings of the federal system. A defendant who cooperates early, prior to seeking advice from an attorney, is often exposed to a greater sentence than one who delays cooperation, speaks to a lawyer and obtains an agreement from the government to not only limit the use of self-incriminating information but also receive a formal substantial assistance motion. While one can argue that the defendant who seeks the guidance of counsel is more savvy, it certainly cannot be said that he is less culpable than his counterpart who waives his rights and begins cooperating prior to seeking such guidance. In fact, in most circumstances, one would be led to the opposite conclusion.

Early and complete cooperation, in the absence of a deal, evidences a level of remorse and potential for rehabilitation that is not so obvious with a defendant who only "talks" after being granted a promise of leniency. If, as viewed by some, cooperation agreements are akin to making a "deal with the devil," a defendant who cooperates outside of such a formal agreement should be viewed as the lesser evil in comparison to his counterpart, who does so only after negotiating a deal. He would, therefore, be deserving of less, not more, punishment. Early cooperation is, in addition, more timely and of greater value to the government than that which is

delayed pending negotiations. Society's interest in suppression of crime is best served when law enforcement gains information sooner rather than later.

Recognizing the interests served by cooperation, as summarized above, the Sentencing Guidelines provide a mechanism for immunity to protect defendants who agree to assist the government. As noted, § 1B1.8 of the Guidelines allows the government to immunize a defendant from self-incriminating admissions made during the course of his cooperation. According to some courts, however, § 1B1.8 only comes into play when an explicit agreement is made and does not apply to statements made at the time of arrest prior to the existence of such an agreement. *See*, *e.g.*, *United States v. Hopkins*, 295 F.3d 549 (6th Cir. 2002); *United States v. Evans*, 985 F.2d 497 (10th Cir. 1993); *United States v. Rutledge*, 900 F.2d 1127 (7th Cir. 1990). This limitation can result, as the PSR proposes here, in greater potential punishment for a defendant who decides to cooperate immediately. In this circumstance, the length of Mr. Osterhout's Guidelines sentence is dictated by the timing of his agreement with law enforcement. This result conflicts with the goals of uniformity and proportionality underlying the Sentencing Reform Act of 1984, and is also inconsistent with the interests supporting the system of cooperation.

Based on the controlled buys and seized methamphetamine, the base offense level should be 32 (157.8 grams of actual methamphetamine and 426.6 grams of methamphetamine substance).

# 18 U.SC. § 3553(a) ARGUMENT

A. <u>Mr. Osterhout's drug amounts are inflated because he tried to assist law enforcement</u>.

If the PSR is followed, Mr. Osterhout is now being punished for his assistance to law enforcement, either by receiving a Guidelines sentence or at the least because of an elevated "starting point" for sentencing.

There is really no difference between a defendant cooperating before representation and subsequent to representation. It goes against the spirit of the Guidelines and of public policy, most specifically 18 U.S.C. § 3553(a), to use his information against Mr. Osterhout. To allow it would stifle cooperation at the earliest stages of an investigation. By taking responsibility for his criminal conduct, Mr. Osterhout subjected himself to a Guidelines range of incarceration that, if followed, would mean he could spend almost twenty-two years in prison, and might only be released after his 82nd birthday, if he were to live that long.

The Sentencing Guidelines are, of course, no longer mandatory. Following the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the Guidelines are now "effectively advisory." *Id*. at 756-57. In sentencing a defendant, as the Court knows well, a district court must impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2):

    (1)    retribution (to reflect seriousness of the offense, to promote

respect for the law, and to provide "just punishment");

(2) deterrence;

(3) incapacitation ("to protect the public from further crimes"); and

(4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

In fashioning a sentence minimally sufficient to comply with these purposes, a district court must consider five additional factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the guidelines and policy statements issued by the Sentencing Commission, including the sentencing guidelines; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution to the victim. 18 U.S.C. § 3553(a)(1)-(7). Neither the statute itself or *Booker* suggests that any one of these factors is to be given greater weight than any other factor. However, again as the Court knows well, it must be kept in mind that all of the factors are subservient to § 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes underlying the Sentencing Reform Act.

Sentencing post-*Booker* is, therefore, comprised of two distinct considerations: the sentencing mandate contained in the prefatory clause of § 3553(a) and the "factors" to be considered in fulfilling the mandate. The sentencing mandate, e.g., sentences must be "sufficient but not greater than necessary," sets forth a limiting

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

9

principle favorable to defendants and is the overriding principle that limits the sentence a court may impose.

Application of these principles to Mr. Osterhout's case supports a mandatory minimum sentence, followed by supervised release. It will also insure that the benefits of his early cooperation are recognized and are not used to a defendant's detriment. His age and health, his early cooperation, and the principles of uniformity and proportionality all instruct that a twenty-two-year sentence, or a sentence anywhere near the Guidelines range, is not appropriate in his case.

B.  The drug guideline fails to account for the facts of this case.

As the Court knows, the drug guideline at Chapter 2D is principally driven by drug quantity. "The statute under which [Mr. Osterhout is] prosecuted, and the Federal Sentencing Guidelines, focus largely on the quantity of drugs defendant had, minimizing the significance of other relevant – and important – questions, like the defendant's real role in the offense or [her] background. . . . While deductions for a defendant's minor role are available under the Guidelines, they are limited and do not come close to offsetting the high quantity-driven base offense level." *United States v. Cabrera*, 567 F. Supp. 2d 271, 272-73 (D. Mass. 2008).

Such considerations lead the *Cabrera* district court to conclude: "False uniformity occurs when we treat equally individuals who are not remotely equal because we permit a single consideration, like drug quantity, to mask other important

factors. Drug quantity under the Guidelines treats as similar the drug dealers who stood to gain a substantial profit, here the purchasers who escaped, and the deliveryman, Cabrera, who received little more than piecework wages." *Cabrera*, 567 F. Supp. 2d at 273 (citing *United States v. Garrison*, 560 F. Supp. 2d 83, 2008 U.S. Dist. LEXIS 40543, 2008 WL 2121784, at *1 (D. Mass. May 20, 2008) (citing to Sandra Guerra Thompson, The Booker Project: The Future of Federal Sentencing, 43 Hous. L. Rev. 269, 275 n.25 (2006); Michael M. O'Hear, The Myth of Uniformity, 17 Fed. Sent'g Rep. 249 (2005)).

The Court can nonetheless consider Mr. Osterhout's cooperation and factor that it into his sentence as a § 3553(a) sentencing consideration. *See United States v. Lazenby*, 439 F.3d 928, 933-34 (8th Cir. 2006) ("Prior to *Booker* the court was then virtually precluded from considering this factor. . . . Under *Booker*, the prosecution's evaluation of the cooperation factor remains critical but is less controlling."); *United States v. Doe*, 398 F.3d 1254, 1261 (10th Cir. 2005) (vacating sentence because "a defendant's assistance should be fully considered by a district court at sentencing even if that assistance is not presented to the court in the form of a § 5K1.1 motion.").

As the Second Circuit explained:

> We agree that in formulating a reasonable sentence a sentencing judge must consider "the history and characteristics of the defendant" within the meaning of 18 U.S.C. § 3553(a)(1), as well as the other factors enumerated in § 3553(a), and should take under advisement any related

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

11

arguments, including the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1 ("non-5K cooperation"). Section 3553(a)(1), in particular, is worded broadly, and it contains no express limitations as to what "history and characteristics of the defendant" are relevant. This sweeping provision presumably includes the history of a defendant's cooperation and characteristics evidenced by cooperation, such as remorse or rehabilitation.

*United States v. Fernandez*, 443 F.3d 19, 33 (2nd Cir. 2006) .

Mr. Osterhout's effort to cooperate is a valid sentencing consideration. In fact, according to the United States Sentencing Commission, as of March 2006, that is, about one year after *Booker*, "there were 258 cases in which cooperation with authorities was given as a reason for the imposition of a non-government-sponsored, below-range sentence." United States Sentencing Commission, *Final Report on the Impact of United States v. Booker on Federal Sentencing*. That data reflects the importance of non-substantial assistance cooperation to sentencing decisions.

More defendant-specific, Mr. Osterhout's cooperation reflects the "history and characteristics of the defendant," (18 U.S.C. § 3553(a)(1)); evidence of "respect for the law," (§3553(a)(2)(A)); deters criminal conduct, (§3553(a)(2)(B)); protects the public from the harm done by defendant, and also protects and warns against future harm by others, (§3553(a)(2)(C)) – all of which are mandated statutory goals. *See Fernandez*, 443 F.3d at 33.

And there can be no dispute that the Guidelines do not consider at all Mr. Osterhout's addiction, age, and health.

C. Mr. Osterhout's age warrants a five-year prison sentence.

Mr. Osterhout is 60 years old, and will be 61 shortly after he is sentenced. PSR Identifying Data. The Bureau of Prisons is ill-equipped to deal with an aging inmate population, whose health and educational needs are often unaddressed by an over-taxed system. *See generally,* U.S. Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, 39 (2015).

Mr. Osterhout's reduced risk of recidivism figures directly in the requirement of 18 U.S.C. § 3553(a)(2)(C) that courts impose sentences that "will protect the public from the further crimes of the defendant." Studies show that defendants in circumstances similar to Mr. Osterhout's – over sixty years of age – have an especially low rate of recidivism. *Id.* at 39. Of all the different age categories, the recidivism rate for defendants between sixty and sixty-four is only 8%. Only 7% were re-arrested for probation/supervised release violations. *Id*. at 40. Mr. Osterhout's low risk of recidivism means that there is no need to impose an excessive prison sentence to protect the public from or deter him.

Courts have recognized the significance of a reduced risk of recidivism and relied upon it in imposing and upholding below Guidelines sentences. *See, e.g., Pepper v. United States*, 131 S. Ct. 1229, 1234 (2011) ("the likelihood that [the defendant] will engage in future criminal conduct," is "a central factor that district

courts must assess"); *United States v. Carter*, 538 F.3d 784, 792 (7th Cir. 2008) (where the court concluded the district court did not abuse its discretion when it determined that the defendant "based on her age and the totality of the circumstances . . . was unlikely to commit further crimes in the future" and upheld a "sentence significantly below an advisory guidelines sentence"); *United States v. Panyard*, 2009 WL 1099257, *1 (S.D.Mich. April 23, 2009) (unpub.) (where the court imposed a 15-month sentence in lieu of a sentence in the Guidelines range of 27-to-33 months "in light of Defendant's history, personal characteristics, and low risk of recidivism"); *United States v. Nellum*, 2005 WL 300073, *3 (N.D.Ind. Feb. 3, 2005) (unpub.) (where court imposed a sentence of 108 months in lieu of a sentence in the Guidelines range of 168-to-210 months because, in part, the defendant, at 57 years of age, had a low likelihood of recidivism).

D.  Mr. Osterhout's health warrants a below-Guidelines-sentence.

Mr. Osterhout suffers from peripheral arterial disease, and has been recommended for surgery to deal with this ailment. PSR ¶ 57. He has been prescribed medications for this pain, although he is not currently on any prescribed medications.

The Bureau of Prisons has insufficient, over-taxed resources to deal with the chronic illnesses of prisoners. *See* U.S. Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (2015). Incarcerating Mr. Osterhout will only burden the Bureau of Prisons and

hamper Mr. Osterhout's ability to get treatment for his condition. *Id.* at 39.

The costs associated with incarceration of the elderly can be extreme. This is due primarily to the increased medical needs of elderly prisoners. An analysis of state prison incarceration costs conducted by economist W.C. Bunting for the American Civil Liberties Union found that the "average estimated cost" of incarcerating an elderly prisoner was nearly twice as expensive as the cost of incarcerating younger prisoners. *See* W.C. Bunting, "The High Fiscal Costs of Incarcerating the Elderly," published in "Aging In Prison: Reducing Elder Incarceration and Promoting Public Safety," compendium study by Center for Justice at Columbia University (November 2015) available at http://centerforjustice.columbia.edu/files/2015/10/AgingInPrison_FINAL_web.pdf; *see also* "At America's Expense: The Mass Incarceration of the Elderly", American Civil Liberties Union (2012) available at https://www.aclu.org/americas-expense-mass-incarceration-elderly.

From the perspective of Mr. Osterhout, who will not receive adequate medical care in prison, and from the perspective of the BOP, who does not have sufficient resources to provide the necessary medical care for aging inmates, to the perspective of the taxpayer-funded government, which funds and allocates those resources, it makes no sense to imprison Mr. Osterhout as he ages into his 70s, if he even lives that long. Moreover, Mr. Osterhout will not walk out of prison a free man. He will then begin serving a term of supervised release of 4 years, subject to many conditions and

monitoring by the United States Probation Office.

## CONCLUSION

A five year prison sentence, including a recommendation to participate in the RDAP, with at least four years of supervised release, is the sufficient but not greater than necessary sentence. It will subject Mr. Osterhout to a federal criminal sentence until he is approximately 70 years old.

That is sufficient punishment. It promotes respect for the law. It deters Mr. Osterhout. It sufficiently protects the public. It will provide Mr. Osterhout with needed medical and drug treatment in the most effective manner.

And it will give Mr. Osterhout hope.

Rehabilitation "cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind, for we are all created in the image of God. A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment." *United States v. Carvajal*, 2005 WL 476125 (S.D.N.Y. Feb. 22, 2005) (unpub.) (emphasis added).

DATED this 8th day of December, 2015.

                              GARY ALLEN OSTERHOUT

            By:  */s/ John Rhodes*
                  JOHN RHODES
                  Federal Defenders of Montana
                    Counsel for Defendant

# CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2015, a copy of the foregoing document was served on the following persons by the following means:

<u>1, 2</u>  CM-ECF

____  Hand Delivery

<u>  3  </u>  Mail

____  Overnight Delivery Service

____  Fax

____  E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. TARA ELLIOTT
   Assistant U.S. Attorney
   Counsel for the United States of America

3. GARY ALLEN OSTERHOUT
   Defendant

By: */s/ John Rhodes*
JOHN RHODES
Federal Defenders of Montana
Counsel for Defendant