**TARA J. ELLIOTT**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**Email: Tara.Elliott@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> vs. <br><br> **GARY ALLEN OSTERHOUT,** <br><br> Defendant. | CR 15-29-BU-DLC <br><br> **GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM** |

Plaintiff, United States of America, by and through its counsel of record, Tara J. Elliott, Assistant United States Attorney for the District of Montana, hereby files its Response to Defendant's Sentencing Memorandum.

1

# ARGUMENT

Osterhout argues that his initial statements to law enforcement at the time of his arrest should not be used in the calculation of his Base Offense Level because he should have been afforded the protections of USSG § 1B1.8.

Osterhout's argument lies in equity rather than fact or law. Osterhout cites no legal authority for his ambitious request, but in fact, cites authority that belies his claim. *See* D. Sent. Memo. at 7; *United States v. Hopkins*, 295 F.3d 549 (6th Cir. 2002); *United States v. Evans*, 985F.2d 497 (10th Cir. 1993); *United States v. Rutledge*, 900 F.2d 1127 (7th Cir. 1990). Additionally, Osterhout's argument is strikingly similar to the issue presented in *United States v. Roman-Zarate*, 115 F.3d 778 in which the Tenth Circuit rejected the argument that § 1B1.8 applies to initial statements by a defendant without an actual agreement. "Section 1B1.8 applies only where two separate agreements have been negotiated: (1) the defendant agrees to cooperate with the government by providing the requisite information, and (2) the government agrees not to use that information against the defendant. *United States v. Evans,* 985 F.2d 497, 499 (10th Cir.1993). *Id*. at 781. No such agreement existed in this case. The Government made no promises to Osterhout about his cooperation. Rather, Osterhout was read his *Miranda Rights* at the

2

beginning of his interview with members of law enforcement and was made no promises about potential cooperation.

During the initial interview of Osterhout, he asked the agents if his statements would be used against him. *See* Ex. A 701_0374 at 4:40. FBI SA Colin Cialella again reminded Osterhout of his rights and stated, "everything you say will be used against you . . . I can't promise you anything. I can't do that. It's not in our realm to do that." *Id*. SA Cialella continued to discuss Osterhout's *Miranda Rights* throughout the interview and repeated that he "can't promise [him] anything." Ex. A 701_0374 at 12:52. Later in the day, SA Cialella again told Osterhout, "the only thing I can guarantee you, which is not even a guarantee, is that if it comes time that you are to be prosecuted for anything . . . your cooperation is weighed heavily and there's a lot of things that can be done depending on . . . what level of cooperation, but we're not there yet . . . I can't guarantee you and nor can Matt." Ex. A 701_0375 at 19:06.[1]

Aside from the legal failings of Osterhout's argument, the facts further support the use of Osterhout's statements to support the PSR. While Osterhout claims that he cooperated or attempted to cooperate with members of law enforcement, the agents involved would tell a different story. They did attempt to

---

1 Osterhout does not necessarily argue this point, but it bears mentioning that FBI Agents do not have the authority to offer immunity to defendants even if, *in arguendo*, that is what occurred here. *See United States v. Flemmi*, 225 F. 3d 78 (First Circuit).

3

get Osterhout to cooperate, but Osterhout began to lead them on a proverbial "wild goose chase" around Bozeman, Montana. In the four-day period that Osterhout was supposed to be cooperating with agents, he rarely answered the agents calls or texts on the phone they purchased for him. During their time with Osterhout, agents noticed him receive numerous texts from an unknown number and he refused to tell the agents who they were from. Osterhout repeatedly tried to get the agents to give him $8200 to leave in a tire in a remote location. Eventually, the agents realized that Osterhout was trying to set them up so that he could take the money himself. When the agents confronted Osterhout with this belief, he disappeared and no longer answered any calls from them. Osterhout was eventually apprehended on the Northern Cheyenne Indian reservation based on information from a confidential informant who indicated that he was going to sell him/her some methamphetamine.

Thus, even if Osterhout thinks he was wronged by agents because of his admissions, his lack of full cooperation further supports the Base Offense Level calculation and denial of the protections of § 1B1.8.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court overrule the Defendant's objection to the Base Offense Level in the PSR.

DATED this 14th day of December, 2015.

MICHAEL W. COTTER
United States Attorney


*/s/ Tara J. Elliott*
Assistant U.S. Attorney
Attorney for Plaintiff